Argued and submitted September 7, 1982, reversed February 23, 1983

# STATE OF OREGON,
*Respondent on review,*

*v.*

# FRANK J. THOMPSON,
*Petitioner on review.*

## (TC 25352, CA A20277, SC 28732)

659 P2d 383

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause and filed brief for respondent on review. With him on the brief were William F. Gary, Solicitor General, and Dave Frohnmayer, Attorney General, Salem.

James K. Gardner, Hillsboro, argued the cause and filed brief for petitioner on review.

John Henry Hingson, III, Oregon City, filed amicus curiae brief for American Civil Liberties Union of Oregon, Inc.

LINDE, J.

## LINDE, J.

Defendant entered a neighbor's land after having been enjoined from doing so in a property dispute.[1] He was indicted for criminal trespass, but while that charge was pending, he was convicted and fined for contempt for violating the injunction. Thereafter the circuit court dismissed the indictment upon defendant's claim that a further prosecution would put him in jeopardy twice for the same offense. On the state's appeal, the Court of Appeals reversed and remanded the case for trial, four judges dissenting. 57 Or App 281, 644 P2d 608 (1982). Having allowed review to consider whether the contempt charge was a criminal prosecution for purposes of the laws governing double jeopardy, we reverse the Court of Appeals and affirm the circuit court.

The majority opinion in the Court of Appeals rested on two premises. First, it stated the "general rule ... that one committing an act which he is enjoined from committing and which is a violation of a penal law may be punished for contempt for violating the injunction, and he may be punished also for a violation of the criminal law." 57 Or App at 284. In Oregon, this is specifically provided by ORS 33.130:

"Persons proceeded against for contempt are also liable to indictment for the same misconduct, if it is an indictable offense, but the court before which a conviction is had on the indictment, in passing sentence, shall take into consideration the punishment before inflicted."

There is nothing unique about a rule that a person's conduct may be punishable under more than one law. *See,* ORS 131.505(2).[2] That, however, does not decide whether the several charges may be prosecuted consecutively.

---

[1] The prior history of this litigation appears in *Thompson v. Scott,* 51 Or App 367, 625 P2d 688, *rev den* 291 Or 151 (1981); *Thompson v. Columbia Cty. Comm'rs.,* 29 Or App 813, 564 P2d 1376, *rev den* 280 Or 171 (1977), *rev den sub nom Thompson v. Minkoff,* 289 Or 1 (1980); and *Thompson v. Scott,* 270 Or 542, 528 P2d 509 (1974).

[2] ORS 131.505(2):

"When the same conduct or criminal episode violates two or more statutory provisions, each such violation constitutes a separate and distinct offense."

Second, the Court of Appeals stated that "the contempt proceeding involved here was purely civil." It explained this characterization by stating that the injunction "was likewise purely civil in nature" and that the contempt proceeding was initiated and pursued by the private party who had obtained the injunction. 57 Or App at 285. This misconceives the nature of criminal contempt. Suits leading to injunctions generally are "civil in nature." We are not aware of a "criminal" injunction. Nor is a penalty for violation of an injunction "civil" when sought by a private party and "criminal" only when the injunction and the penalty are sought by the state. Rather, as the court elsewhere correctly noted, we have described a penalty for contempt as "civil" when it is imposed in order to compel compliance with an order and will end as soon as the respondent complies, and as "criminal" when it is imposed as punishment for a completed contempt that can no longer be avoided by belated compliance. *See In re Hanks,* 290 Or 451, 458 n. 10, 623 P2d 623 (1981); *State ex rel Baker Lodge v. Sieber,* 49 Or 1, 8, 88 P 313 (1907).

By this test, defendant indisputably had been fined for a criminal contempt. He had entered and done some road work on the neighbor's property in violation of the court's order, and the fine was a penalty for that act, not a sanction to compel future compliance, except as any penalty short of death seeks to discourage repetition of the forbidden act.

■ Neither of the two reasons stated by the Court of Appeals therefore meets defendant's objection to his consecutive prosecutions for criminal contempt and for criminal trespass. Rather, the question is whether a charge of criminal contempt is a prosecution for an offense for purposes of the rules governing consecutive prosecutions. Those rules are stated in the Oregon Revised Statutes, in article I, section 12 of the Oregon Constitution, and in the fifth amendment of the United States Constitution, which the fourteenth amendment binds every state to observe. Although the arguments and opinions below did not distinguish between these sources, to the extent that statutory law disposes of a case a court has no occasion to reach a constitutional issue. *State v. Spada,* 286 Or 305, 594 P2d

815 (1979); *State v. Smyth,* 286 Or 293, 593 P2d 1166 (1979).

 This state's policy toward multiple prosecutions is codified in ORS 131.505 to ORS 131.535. The operative provisions pertinent to this case are the first two subsections of ORS 131.515:

> "(1) No person shall be prosecuted twice for the same offense.

> "(2) No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

ORS 131.505(2), quoted *supra* note 2, provides that violation of several statutes in a single conduct or episode constitutes separate and distinct offenses. According to ORS 131.515(2), such "offenses based upon the same criminal episode" must be prosecuted together "if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court." Repeated prosecutions are permitted only under circumstances stated in ORS 131.525, none of which are present here. The record shows that the prosecutor knew of the contempt proceeding against defendant but made no effort to have the trespass charge tried at the same time. As the present charges unquestionably arise out of one episode, whether the statute applies depends on whether criminal contempt is an "offense."

The operative terms are defined in the statutes. ORS 131.505 prescribes that "offense" is to have the meaning provided in ORS 161.505:

> "An offense is conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state or by any law or ordinance of a political subdivision of this state. An offense is either a crime or a violation or an infraction."

ORS 131.505(5) provides that a person is "prosecuted for an offense" when he is charged therewith by an "accusatory instrument" and the trial proceeds to the swearing of the first witness. An "accusatory instrument," in turn, includes

not only an indictment or an information but also a "complaint," which is further defined as "a written accusation [under oath] filed with a magistrate, and charging another person with an offense" other than a felony. ORS 131.-005(1), (3). The drafters' focus in these provisions doubtless was on the conventional processes of enforcing the criminal law, but this does not mean that the provisions do not apply to criminal contempts. Such a contempt is an "offense" because a sentence of imprisonment or a fine is provided by a "law of this state," specifically by ORS 33.020(1).[3] Pursuant to ORS 33.040, the contempt charge against defendant was initiated by a sworn affidavit presented to the court, which satisfies the definition of a "complaint" as one form of accusatory instrument. The criteria of the statute against separate prosecutions therefore are met.

This reading of ORS 131.515 to encompass proceedings on contempt charges under ORS 33.040 carries out the policies that the statutes governing multiple prosecutions are designed to serve. We are not here concerned with vindicating a court's immediate authority by summary punishment for direct contempt, ORS 33.030, which does not depend on a trial of facts upon an accusation, nor with cumulative punishment for the violation of a criminal law as well as a court order, which is addressed in ORS 33.130, *supra.*[4] The statutes are designed to serve the policy against consecutive prosecutions that also underlies the constitutional guarantees. *State v. Boyd,* 271 Or 558, 562, 533 P2d 795 (1975); *State v. Brown,* 262 Or 442, 497 P2d 1191 (1972); Criminal Law Revision Commission, Proposed

---

[3] ORS 33.020(1):

"Every court of justice and every judicial officer has power to punish contempt by fine or imprisonment, or both; but such fine shall not exceed $300 nor the imprisonment six months, except in the cases mentioned in subsection (2) of this section; and when the contempt is not one of those mentioned in ORS 33.010(1)(a) and (b), or in ORS 1.240(1), it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby before the contempt can be punished otherwise than by a fine not exceeding $100."

Defendant was fined $500, but as the dissent in the Court of Appeals noted, he made no issue of the legality of this amount.

[4] That statute also avoids the problem of double punishment for the same offense that would arise if the contempt penalty were not credited against a criminal sentence for the offense that constituted the contempt.

Oregon Criminal Procedure Code, § 27 (now ORS 131.515) commentary at 19-20 (1972).

Other courts have applied those guarantees to bar prosecutions for conduct that had been punished as criminal contempt if the charges otherwise met the jurisdiction's criteria of double jeopardy. *Colombo v. New York,* 405 US 9, 92 S Ct 756, 30 L Ed 2d 762 (1972), made this clear as a matter of the fifth amendment and due process; on remand, the New York Court of Appeals found that the crime for which Colombo was prosecuted indeed was the same offense for which he earlier had been held in contempt. *People v. Colombo,* 31 NY2d 947, 341 NYS2d 97, 293 NE2d 247 (1972). The Illinois Supreme Court reached the same result in *People v. Gray,* 69 Ill2d 44, 370 NE2d 797 (1977), *cert den* 435 US 1013, 98 S Ct 1887, 56 L Ed 2d 395 (1978), after determining that the elements of the subsequent criminal charge were the same as those of the contempt for which defendant had been punished. This line of analysis would lead us into comparisons between the views of this and other courts, not as to the application of the constitutional guarantee to criminal contempts, but as to the required congruence between the contempt and the criminal charge.[5] As we have said, however, the statutory

---

[5] *Cf. State v. Brown,* 262 Or 442, 497 P2d 1191 (1972). To the argument that the elements of the criminal charges in *People v. Gray, supra,* were not identical with those of the preceding violation of a court order, the Illinois Supreme Court stated:

> "To subject a person to multiple successive prosecutions because of differences in detail in proofs undermines the fundamental basis of the double jeopardy ban. Considerations of fairness and finality, the very foundation of the double jeopardy bar, require a nontechnical evaluation of the 'same evidence' test, and a focus upon the similarity of the elements involved in the two proceedings."

370 NE2d at 800.

Recent cases from other jurisdictions are in accord that an indirect criminal contempt proceeding bars on double jeopardy grounds a subsequent criminal prosecution based on the same facts. *See, e.g., United States v. Haggerty,* 528 F Supp 1286, 1296-1300 (D Colo 1981) (strike against government); *United States v. U.S. Gypsum Co.,* 404 F Supp 619, 622-23 (D DC 1975) (price fixing); *Simanonok v. Randle,* 388 So2d 45 (Fla App 1980) (refusal to connect sewer); *People v. Gray, supra* (shooting wife). Courts have permitted a subsequent criminal prosecution only when the criminal contempt conviction was direct and summary. *See, e.g., United States v. Rollerson,* 145 US App DC 338, 449 F2d 1000 (1971) (assault on federal officer); *O'Malley v. United States,* 128 F2d 676, 684 (8th Cir 1942), *rev'd on other grounds* 317 US 412, 63 S Ct 268, 87 L Ed 368 (1943) (conspiracy to obstruct justice); *United States v. Mirra,* 220 F Supp 361 (SD NY 1963) (assault on prosecutor); *Maples v. State,* 565 SW2d 202 (Tenn 1978) (perjury).

codification of Oregon's policy toward separate prosecutions of offenses based on the same episode makes it unnecessary to reach a constitutional issue in this case.

The state argues that it does not really "prosecute an individual when it simply performs its governmental function of providing a neutral forum for adjudicating the rights of private parties and a means of enforcing the rights thus determined," and that the use of a court's contempt power at the instance of a private party "simply is not 'State action'" so as to preclude a subsequent prosecution. We must assume that the state does not mean "state action" as that term is used in fourteenth amendment analysis. The Supreme Court held to the contrary in *Bloom v. Illinois*, 391 US 194, 88 S Ct 1477, 20 L Ed 2d 522 (1968), which decided that due process, incorporating the jury trial provision of the sixth amendment, requires jury trial of criminal contempts when the potential penalty exceeds that for a "petty offense."

Civil contempt provides judicial sanctions to secure compliance with a court order, but by definition, a penalty for criminal contempt punishes the act of noncompliance irrespective of a defendant's readiness to comply. In *Bloom v. Illinois, supra,* the Supreme Court described criminal contempt as "a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." In essence, the state asks us to abandon that definition of criminal contempt when the punishment is triggered by a private party's complaint that a court order has been violated. We do not agree that this fact changes the punitive character of the penalty any more than in the case of any other violation prosecuted upon complaint of a private person. The statutes expressly provide that the name of the State of Oregon be added as a party plaintiff in the affidavit charging a contempt, that the state is the plaintiff in the proceeding, and that the district attorney may prosecute it on the part of the state if the case is one of public interest or if the private party cannot afford private counsel. ORS 33.040, 33.060. We decline to hold that the prior conviction in this case was one for "civil contempt."

The decision of the Court of Appeals is reversed, and the order of the circuit court is affirmed.